THE STATE v. F. S. MARKEL, Appellant.—77 S. W. (2d) 112.

Division Two, December 1, 1934.

130

*Finch & Finch* and *Ward & Reeves* for appellant.

*Roy McKittrick,* Attorney General, and *William W. Barnes,* Assistant Attorney General, for respondent.

WESTHUES, C.—This is an appeal from a conviction of murder in the second degree. Punishment assessed was ten years' imprisonment in the penitentiary. The shooting, out of which the charge against appellant arose, occurred in Cape Girardeau County, Missouri. The case was tried on change of venue in Scott County. The trial court submitted the case to the jury on the question of murder in the first and second degrees and manslaughter.

The evidence disclosed the following: Appellant was a medical doctor living in the town of Allenville, Missouri. He had practiced his profession in this vicinity for many years. He and his wife also conducted a store which was located near the village postoffice. It seems to have been the custom of the citizens to celebrate certain public holidays by shooting firecrackers. This sport was mainly engaged in by younger people, however, some of mature age also took part in the shooting. Christmas Eve, December 24, 1931, about six P. M., or a short time thereafter, the deceased and a number of others were shooting firecrackers near the postoffice in a street northwest of appellant's store. While this shooting was going on appellant went to a vacant lot to the rear of his store with a pistol and shot a number of times. The evidence disclosed that while these shots were being

fired by appellant one of the boys, named below, was shot through the neck and the deceased, Walter Givens, was shot in the head, from which wound he died within a few minutes. The vacant lot in the rear of appellant's store was enclosed by a board fence about six or seven feet high in which a number of bullet holes were found. Witnesses testified that they saw a man with a white shirt standing in the vacant lot to the rear of appellant's store. Flashes from the gun indicated that the shots were being fired in the direction of where the boys were shooting firecrackers. It was too dark to identify anyone, but light enough to see the outline of people moving about in the street.

The theory of the State was, that appellant took offense at the boys shooting firecrackers and deliberately fired in the direction of where the boys were located. Appellant's defense was, that he was merely joining in the celebration and had no intention whatever of hitting anyone and that he did not know anyone was in danger of being struck by the shots fired. The vital issue in the case was the intention of appellant in firing the shots. With this in mind we will discuss the assignments of error in the motion for new trial, filed by appellant, which the trial court overruled. Appellant complains of the admission in evidence of statements attributed to him prior to the shooting. The first of such statements was offered by the evidence of a man named Lewis Thomas, who testified that appellant made a statement to him on Halloween night, 1931, after appellant had been to the rear of the store, to the effect: "There are some boys out there with a red light and they came from toward your corner, or from toward your place, and if I had had my gun I would have certainly shot them." The testimony of the second statement, offered by the State, of which appellant complains, was also given by witness Lewis Thomas. Thomas testified that shortly after Halloween, 1931, he had a conversation with appellant wherein the shooting of firecrackers was mentioned and appellant said: "I have talked to the boys and if I cannot stop them one way I will another." And also: "I have talked to the boys and it does no good and I am going to do something else." The third and last alleged statement, proven by the State, was offered by witness Guy Loesch. This witness testified that about Thanksgiving, 1931, he overheard a conversation between a boy named Shirley Young and appellant, wherein Shirley Young made the statement: "You wouldn't shoot us would you?" and appellant replied: "I would." The State did not prove what the subject of this conversation was between Young and appellant. Appellant denied having made any of the threats attributed to him.

Appellant in his brief says:

"The defendant's general reputation for being a law abiding citizen was not put in issue and specific acts can't be used for the purpose of attacking his character."

■ A number of cases were cited to support this statement. The evidence of the threats were not offered for the purpose of attacking the character of appellant but were offered in support of the State's theory that appellant intentionally shot at the boys on Christmas Eve when Givens met his death. For this purpose the evidence, with the exception of the conversation between Shirley Young and appellant, was competent. It must be borne in mind, as above stated, that the intention with which the shots were fired was the main disputed issue in the case. Appellant contends the evidence was incompetent to show threats because the threats, if made, were not made against the deceased. That, however, was not necessary. No showing was made that appellant recognized any one of the boys he is alleged to have seen on Halloween night or on the night of the shooting. The threats, if made, were not against any particular person but against persons in general who saw fit to engage in the sport of shooting firecrackers or in any other sports of like nature depending on the celebration, such as the semi-mischievous pranks which usually are perpetrated by boys on Halloween night. So that threats, if made, were against a class of persons such as gathered upon the street to shoot firecrackers on the night of the shooting. The prosecution was, therefore, entitled to introduce evidence of the alleged threats for the consideration of the jury in determining appellant's intention at the time of the shooting. [30 C. J., p. 191, sec. 418; State v. Grant, 79 Mo. 113, l. c. 137, 49 Am. Rep. 218; State v. Stallings, 33 S. W. (2d) 914, l. c. 917 (9), 326 Mo. 1037, l. c. 1046; Parker v. State, 136 Ind. 284, 35 N. E. 1105; Smith v. State (Okla.), 293 Pac. 569.]

Since the State failed to show the subject matter of the alleged conversation between Shirley Young and appellant the trial court should not have admitted the isolated portion of such conversation as above quoted. The subject of the conversation may have been entirely foreign to any matter affecting this case. If it can be shown upon another trial what the subject matter of the conversation was the trial court can intelligently rule upon the admissibility or inadmissibility of the evidence. We are not holding that the admission of this particle of testimony justifies a reversal of this case. The case must be reversed upon grounds hereinafter to be discussed.

■ Error was assigned to the admission of evidence of a ballistic expert, who testified to the effect that the bullet taken from the head of the deceased was shot from appellant's pistol. That such evidence is admissible is now fairly well settled by the weight of authority. This question was fully discussed in a recent case by this court in State v. Shawley, 334 Mo. 352, 67 S. W. (2d) 74. The evidence was held to be competent. The point is ruled against appellant upon the authority of that case. For cases from other states on this subject see Evans v. Commonwealth, 230 Ky. 411, 19 S. W. (2d) 1091, 66 A. L. R. 360, annotations for cases from other states page 373.

134

■ Appellant insists that the trial court erred in giving instructions on murder in the first and second degrees. Under the evidence the court was authorized in so submitting the case. There was evidence introduced from which the jury could have found that appellant possessed a dislike toward the shooting of firecrackers. There was also evidence which justified a finding that at the very time when appellant stepped from his store to the lot with his gun, boys were shooting firecrackers and that the location of the boys could easily be determined by the sounds and flashes of explosions. The evidence also justifies a finding that appellant intentionally shot in the direction of where the boys were located. If that be true the verdict of murder in the second degree, as returned by the jury, was amply supported by the evidence. The evidence also fully justified the submission of the case on the question of murder in the first and second degrees and manslaughter.

Complaint is made of the instruction on manslaughter in that it does not correctly define culpable negligence. The instruction may be subject to some criticism. No doubt on a retrial it can be redrafted and improved. This court recently reviewed the question of instructions on manslaughter arising out of culpable negligence. We suggest that on another trial the instruction on this subject be so framed as to conform to the rulings in the case of State v. Studebaker, 334 Mo. 471, 66 S. W. (2d) 877, and cases therein approved.

Error was assigned to the refusal of a number of instructions requested by appellant. By these instructions appellant sought to submit to the jury appellant's defense that if the shooting of deceased was unintentional and a mere accident then appellant was not guilty of murder in either the first or second degree. A number of these instructions were not in proper form for the reason that they required the jury to acquit appellant unless they found beyond a reasonable doubt that he intentionally shot at the deceased or some other person. The jury may well have found that appellant did not intentionally shoot to hurt anyone and have found him guilty of culpable negligence and, therefore, guilty of manslaughter.

■ We are of the opinion, however, that the following instruction, requested by appellant, should have been given:

"The court instructs the jury that the defense in this case is that if the defendant did shoot the deceased that such shooting was an accident, and you are instructed that the defendant is not required to prove that it was an accident, but the burden of proof is upon the State to show that it was not an accident but that said shooting was intentionally done by the defendant with the intention of shooting the deceased or some other person, and the State must make this proof beyond a reasonable doubt; and unless the State has so made this proof, then you should acquit the defendant of both murder in the first and second degree."

This was the converse of the State's instruction. The intent with which the shooting was done was the main disputed issue in the case. The trial court did not give an instruction directly covering this point and, therefore, under our consistent rulings, committed reversible error in refusing to give the defendant an instruction upon his theory of the case. Defendant was entitled to have the jury instructed clearly upon his defense. In State v. Ledbetter, 332 Mo. 225, 58 S. W. (2d) 453, l. c. 454, this court said:

"We have uniformly held that where a defendant in a criminal case formulates and asks an instruction that correctly declares the law which is the converse of the State's principal instructions, it is the duty of the trial court to give the same. And it is reversible error to refuse such converse instruction, unless the State's instructions clearly submit the converse of the facts and issues upon which convictions are authorized."

Numerous Missouri cases were cited in support of this rule.

Other matters complained of are of such a nature that they will not likely occur upon a retrial and, therefore, we need not discuss them. For the errors indicated the case is reversed and remanded for a new trial. Cooley and Fitzsimmons, CC., concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.